IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **FAYE R. HOBSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 3:15-cv-0741** |
| ) | **Judge Aleta A. Trauger** |
| **RETIRED GENERAL JAMES MATTIS,** ) | |
| Secretary, Department of Defense, ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## MEMORANDUM

Before the court is the defendant's Motion to Dismiss under 12(b)(1), or in the Alternative for Summary Judgment. (Doc. No. 45.) As explained herein, a plaintiff's failure to administratively exhaust her claims does not deprive the court of jurisdiction; dismissal under Rule 12(b)(1) is not warranted. However, the defendant's alternative motion for summary judgment based on the plaintiff's failure to exhaust administrative remedies will be granted.

## I.     Factual and Procedural Background

At all relevant times, plaintiff Faye Hobson worked for the United States Department of Defense Education Activity ("DoDEA") as a Language Arts teacher at Camp Humphreys High School in South Korea, Pacific District. (Pl.'s Resp. to Def.'s Statement of Material Facts, Doc. No. 51 ¶ 1.) She is an African American woman and has been a teacher with the DoDEA for thirteen years. (Verified Compl., Doc. No. 1 ¶¶ 3, 21.)

The plaintiff alleges that the DoDEA, acting through the plaintiff's supervisor, Principal Susan Kennedy, paid her $2,795 as Extra Duty Compensation ("EDC") for acting as Senior

Class Sponsor during School Year ("SY") 2013–2014, but it paid a white female, Michelle Mundy, EDC in the amount of $3,915 for performing the same task during SY 2014–2015. (*Id.*) The plaintiff contends that the difference in pay was the result of race discrimination and that this discrimination was "expanded" when Kennedy prohibited the Senior Class of 2014 from publicly acknowledging Hobson as their Senior Class Sponsor at their graduation ceremony. (*Id.*) She also alleges that Kennedy did not award her "an incentive award due to personal reasons." (*Id.* ¶ 6.) She learned of the pay discrepancy on January 30, 2015, and learned that she had been denied the incentive award on February 2, 2015. (*Id.*)

Hobson's teaching position at Camp Humphreys was covered by a collective bargaining agreement ("CBA") between the defendant and the labor union, the Overseas Education Association ("OEA"), representing the plaintiff's work unit. (Doc. No. 51 ¶ 2.) The CBA's Grievance Procedure is contained in Article 12 thereof. (CBA Art. 12, Doc. No. 47-7.) Step 1 of the procedure provides for the presentation and resolution of informal grievances. Step 2 provides for a formal, written presentation of the employee's grievance to her supervisor in the format prescribed by Article 12. The supervisor is to issue a written decision on the grievance within seven days. (CBA Art. 12 § 4.) Within ten days after receipt of that decision, the employee may advance the grievance to Step 3 by seeking review of that decision from the Regional Director of her division. The regional review is to be completed and a final decision rendered within twenty days from its receipt. (*Id.*) Thereafter, an aggrieved employee dissatisfied with that final decision may seek arbitration, but it appears that the union actually has to make the decision whether to proceed to arbitration on behalf of the employee. (*See id.* § 6 ("Should either the Employer or the [OEA] be dissatisfied with the final decision of the other party in a

grievance covered by this Agreement, the party ([OEA] or Employer) that brought the grievance may proceed to arbitration.").)

On February 3, 2015, the plaintiff invoked the CBA Grievance Procedure by filing a Step 2 formal written grievance pursuant to Article 12, Section 4 of the CBA (the "CBA grievance"). (*See* Grievance, Doc. No. 47-2, at 2 ("This grievance is being submitted under Step 2 of the grievance procedure."); CBA Art. 12 § 4, Doc. No. 47-7, at 6 (defining procedure for submitting a formal written grievance under Step 2 of the Grievance Procedure).) In her CBA grievance, the plaintiff asserted claims based on the same events that underlie her claims in this court: that another employee was paid a higher rate in SY 2014–2015 for the same extra duties the plaintiff had performed in SY 2013–2014 as the Senior Class Sponsor; that the senior class was not allowed to present gifts to her at the graduation ceremony; and that she was denied an incentive award. The plaintiff mentions in the CBA grievance that she "find[s] it ironic and somewhat insulting that the Senior Class Advisor compensation increased when a Caucasian female [was] serving as sponsor and not while . . . an African American served as Senior Class Advisor" (Doc. No. 47-2, at 6), but she does not actually purport to assert a claim of discrimination based on race.

The CBA grievance was denied at Step 2 on February 18, 2015. (Doc. No. 47-3.) The plaintiff elevated it to Step 3 on February 26, 2015. (Doc. No. 47-4.) In her Step 3 appeal, the plaintiff does not mention race at all. She attributes the discrepancies in EDC to "blunt acts of favoritism." (Doc. No. 47-4, at 3.) She received a Notice of Final Decision on April 2, 2015, notifying her that the grievance had been denied at that level as well. (Doc. No. 47-5.) The plaintiff did not request to proceed to arbitration.

Instead, on April 5, 2015, the plaintiff made her initial contact with Lucy Sabanal, an EEO Counselor with the defendant's EEO office, about this matter. (*See* Counselor's Report, Doc. No. 47-9.) On April 30, 2015, the plaintiff filed a formal written complaint with the defendant's EEO office, alleging that she had suffered discrimination on the basis of race and retaliation for having engaged in protected activity. (Doc. No. 47-6.) The specific events she complained about included the lower EDC for being Senior Class Sponsor for SY 2013–2014, compared to the EDC for the same position during SY 2014–2015, and the principal's refusal to give her an incentive award. (Formal EEO Compl., Doc. No. 47-6, at 3.)

By letter dated May 15, 2015, the EEO dismissed the plaintiff's formal complaint of discrimination on the basis that, because the plaintiff had opted initially to proceed under the CBA Grievance Procedure, she no longer had the option of filing an EEO complaint based on the same events. (Doc. No. 47-1, at 3 (citing 29 C.F.R. § 1614.301(a)).) The letter also provided notice to the plaintiff of her right to appeal the dismissal of her claims to the EEOC or to file a civil action in this court. (*Id.* at 4.)

The plaintiff filed her Verified Complaint (Doc. No. 1) in this court on July 2, 2015, against the Secretary of the United States Department of Defense, in his official capacity, asserting claims of race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* ("Title VII"). The matter was initially assigned to district Judge Todd Campbell and referred to the magistrate judge. The defendant filed his Motion to Dismiss under Rule 12(b)(6) in October 2015. (Doc. No. 17.) In September 2016, Judge Campbell revoked the reference to the magistrate judge as it pertained to the Motion to Dismiss and denied that motion without prejudice to its being refiled as a Motion for Summary Judgment that complied with Local Rule 56.01. (Doc. No. 32.) Thereafter, this case was transferred to the

undersigned on the basis that it is related to two other cases filed by the plaintiff that are or were pending before this judge.

Now before the court is the defendant's Motion to Dismiss under Rule 12(b)(1), for lack of subject matter jurisdiction, and alternative Motion for Summary Judgment based on the plaintiff's failure to exhaust administrative remedies. (Doc. No. 45.) The defendant has resubmitted with this motion all the same documents previously filed in support of his motion to dismiss for failure to state a claim (Doc. No. 17). (*Compare* Doc. Nos. 19 and 47.) The motion has been fully briefed, and is ripe for review. The court has withdrawn the referral of this motion to the magistrate judge.

## II.      Characterization of the Motion

Although styled "in the alternative" as a motion for summary judgment, the primary basis for the defendant's motion is that the court lacks subject matter jurisdiction over the plaintiff's Title VII claims as a result of her failure to properly exhaust administrative remedies before filing suit in federal court. (*See* Doc. No. 46, at 2 ("Defendant moves to dismiss Plaintiff's civil action for lack of subject matter jurisdiction . . . ."); *id.* at 8 ("This Court lacks jurisdiction because Plaintiff failed to exhaust her administrative remedies in the negotiated grievance process . . . .").)

The Sixth Circuit, however, has expressly recognized that, "where a plaintiff has not exhausted administrative remedies, a district court may not dismiss the [Title VII] claim on jurisdictional grounds." *Adamov v. U.S. Bank Nat'l Ass'n*, 726 F.3d 851, 855–56 (6th Cir. 2013) (citing *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006); *Hill v. Nicholson*, 383 F. App'x 503 (6th

Cir. 2010)).[1] Rather, failure to exhaust is an affirmative defense that may be waived by the defendant. *See id.* at 856 (reversing and remanding the dismissal of the plaintiff's Title VII retaliation claim, holding that the district court had erred in dismissing the claim *sua sponte* based on lack of subject matter jurisdiction and that the defendant "forfeited the argument that [plaintiff] did not exhaust his retaliation claim by failing to raise it to the district court"). Accordingly, the court rejects the defendant's argument that dismissal is warranted under Rule 12(b)(1) for lack of subject matter jurisdiction.

Because the motion is brought "in the alternative" as one for summary judgment, the court construes it as arguing that the defendant is entitled to summary judgment in his favor as a matter of law, likewise based on the plaintiff's failure to exhaust. The defendant still has not strictly complied with Local Rule 56.01, because he did not file a "separate, concise statement of the material facts," with each separately numbered "fact" followed by the word "response" and a blank space for the plaintiff to respond to the assertion of fact. L.R. 56.01(c)

The court nonetheless finds substantial compliance with the rule. In the defendant's Memorandum in support of his motion, he included a section entitled "Statement of Material Facts." (Doc. No. 46, at 2–4.) Within that section, each material fact is separately enumerated and followed by a citation to the factual record. Although he did not leave space for the plaintiff to respond, the plaintiff's Memorandum in Opposition to the Motion includes a section in which the plaintiff responds, in enumerated paragraphs, to each of the defendant's facts. (*See* Doc. No.

---

[1] In *Hill*, the Sixth Circuit acknowledged that it had previously characterized Title VII's "requirement that an allegation be included in an EEOC charge [as] jurisdictional." *Hill*, 383 F. App'x at 508 (citing *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 545 (6th Cir. 1991)). It concluded that that position was no longer defensible in light of the Supreme Court's holding in *Arbaugh* that Title VII's numerical threshold of fifteen or more employees was not jurisdictional and could be waived, as well as the Sixth Circuit's decision in *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 401–02 (6th Cir. 2008), also based on *Arbaugh*, that the Age Discrimination in Employment Act's exhaustion requirement is not jurisdictional.

51, at 2–5.) The plaintiff has clearly been put on notice that the defendant relies on facts outside the pleadings; she also relies on facts outside the pleadings and has not raised an objection based on the defendant's failure to comply strictly with the local rule. Accordingly, in the interests of judicial and party economy, the court will proceed to consider the motion on its merits, under the standard applicable to motions for summary judgment.

## III.    Standard of Review

Summary judgment is appropriate where there is "no genuine issue as to any material fact," and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

## IV.    Discussion

The defendant argues that a federal employee who is subject to a CBA, and whose employment grievance is covered by the CBA, must bring her grievance either in accordance with the procedures established under Title VII or in accordance with the procedures established by the CBA, but not both. Because the plaintiff elected to proceed under the CBA, she lost the option of proceeding under Title VII, and she did not properly exhaust her claims through the CBA Grievance Procedure in any case.

In response, the plaintiff insists that, at the time she filed her complaint, discrimination claims were excluded from the CBA grievance procedure, and she properly exhausted her discrimination claim through the EEO channels, at the end of which she was accorded the right to file suit in federal court. The plaintiff also alleges that she was told by union officials that discrimination matters were handled through the EEO process, rather than through the CBA grievance process, thus, she claims, leading her to believe that she could not raise a discrimination claim in her CBA grievance.

### A.    Legal Framework

It is well settled that "[a] person seeking to bring a discrimination claim under Title VII in federal court must first exhaust her administrative remedies." *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 731 (6th Cir. 2006) (citing *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832 (1976)). Further, however, the rights of federal employees who are also members of collective bargaining units are governed by 5 U.S.C. § 7121(d). Under § 7121(d), "[a]n aggrieved employee affected by a prohibited personnel practice under section 2302(b)(1) of this title"— including unlawful discrimination on the basis of race—"which also falls under the coverage of the negotiated grievance procedure may raise the matter under a statutory procedure or the negotiated procedure, *but not both*." 5 U.S.C. § 7121(d). In other words, the provision "explicitly requires an aggrieved employee to make an irrevocable election of remedies." *Smith v. Kaldor*, 869 F.2d 999, 1005 (6th Cir. 1989). The employee may either pursue exhaustion through the EEO/Title VII procedure or through the CBA procedure. *See Redmon v. Mineta*, 243 F. App'x 920, 924 (6th Cir. 2007) ("Since Redmon elected to pursue her union's negotiated grievance procedure to challenge her suspension and reassignment before submitting the EEO complaint,

she was foreclosed from utilizing the EEO administrative procedure to challenge these adverse employment actions." (citing 5 U.S.C. § 7121; 29 C.F.R. § 1614.107(a)(4)).

The Federal Sector Equal Employment Opportunity regulations are similarly explicit that federal employees must choose between exhaustion under Title VII and its implementing regulations or a collective bargaining agreement's grievance procedures:

> When a person is employed by an agency subject to 5 U.S.C. 7121(d) and is covered by a collective bargaining agreement that permits allegations of discrimination to be raised in a negotiated grievance procedure, a person wishing to file a complaint or a grievance on a matter of alleged employment discrimination must elect to raise the matter under either [29 C.F.R.] part 1614 [regulating Federal Sector Equal Employment Opportunity] or the negotiated grievance procedure, but not both. . . . An election to proceed under a negotiated grievance procedure is indicated by the filing of a timely written grievance. An aggrieved employee who files a grievance with an agency whose negotiated agreement permits the acceptance of grievances which allege discrimination may not thereafter file a complaint on the same matter under this part 1614 . . . .

29 C.F.R. § 1614.301(a).

The employee's decision to proceed under a CBA rather than through the EEO procedure is irrevocable, "irrespective of whether the agency has informed the individual of the need to elect or of whether the grievance has raised an issue of discrimination." *Id.* On the other hand, if a CBA does not permit grievances alleging discrimination, "allegations of discrimination shall be processed as" EEO complaints. *Id.* § 1614.301(b). If a plaintiff brings an EEO complaint after having already elected to pursue a complaint involving the same matter under a negotiated grievance procedure, the EEO must dismiss the entire complaint. 29 C.F.R. § 1614.107(a)(4).

**B.      The Plaintiff's CBA Covers Discrimination Complaints**

The plaintiff's first argument here is that the CBA does not permit complaints of discrimination and, therefore, that she is not precluded from pursuing a discrimination complaint through the EEO procedure.

The plaintiff is simply incorrect. The CBA between the plaintiff's agency and her collective bargaining unit, the OEA, establishes that its procedure applies to any grievance "by a unit employee concerning any matter relating to the employment of the employee." (CBA § 2.B(1), Doc. No. 47-7, at 5.) While the language of this section does not expressly refer to discrimination claims, it does not exclude them, and it is plain that discrimination claims generally "relat[e] to the employment of the employee." (*Id.*) Moreover, Section 2 of the CBA identifies those grievances to which it does *not* apply, including claims relating to retirement, life insurance, or health insurance; termination of trial period employees and temporary appointments, and other matters. (*Id.* § 2.C.) This short list of ten items does not include claims relating to discrimination.

The CBA itself recognizes that, "[u]nder . . . 5 U.S.C. 7121, unit employees may raise certain matters under this negotiated grievance procedure or under a statutory procedure, but not both." (CBA Art. 12 § 7.G.) The same paragraph makes it clear that an employee or her union representative "shall be deemed to have exercised [her] option as to procedure when a timely grievance under this procedure is filed or a charge, appeal, or complaint under the applicable statutory procedure is initiated, whichever event occurs first." (*Id.*) In addition, Article 18 of the CBA, titled "Nondiscrimination," verifies the agency's and OEA's commitment to cooperate in providing equal employment opportunity for all persons. Contrary to the plaintiff's assertion, this Article does not establish that discrimination claims are not covered by the CBA.

In sum, the court concludes that the CBA covers discrimination claims and that the plaintiff irrevocably elected to proceed under the CBA when she submitted her Step 2 written CBA grievance.

C.       **Estoppel: Allegedly Misleading Information from Union Representatives**

The plaintiff did not file a statement of additional disputed facts, as authorized by Local Rule 56.01(c), but she nonetheless asserts additional facts in her Memorandum in Opposition to the Motion to Dismiss, including that she was told by union officials that the union "does not get involved with discrimination matters; discrimination issues are handled through the EEO process." (Doc. No. 51, at 6.) The court understands the plaintiff to be attempting to argue that the defendant should be equitably estopped from asserting a defense based on failure to exhaust, because the plaintiff was provided incorrect information about the exhaustion process by her union.

"Estoppel is an equitable doctrine which a court may invoke to avoid injustice in particular cases." *Premo v. United States*, 599 F.3d 540, 547 (6th Cir. 2010) (quoting *Mich. Express, Inc. v. United States*, 374 F.3d 424, 427 (6th Cir. 2004)). The elements of an estoppel claim are: "(1) misrepresentation by the party *against whom estoppel is asserted*; (2) reasonable reliance on the misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel." *Id.* (emphasis added) Further, however, the government "may not be estopped on the same terms as any other litigant." *Id.* (quoting *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 60 (1984)). "A party attempting to estop the government bears a very heavy burden. At a minimum, Plaintiff must show some affirmative misconduct by the government in addition to establishing the other elements of estoppel. Affirmative conduct is more than mere negligence. It is an act by the government that either intentionally or recklessly misleads the claimant." *Id.* (internal quotation marks and citations omitted). The burden of proving estoppel is on the party asserting it.

Here, the plaintiff cannot establish the first element of estoppel. She alleges that union representatives, not DoDEA representatives, made affirmative misrepresentations about the scope of the CBA Grievance Procedure. The plaintiff has not alleged facts suggesting that statements by union officials could be attributed to the DoDEA for purposes of estoppel. And even if she had, she has not alleged affirmative misconduct in the form of a reckless or intentional act by an agency representative. For this reason alone, the plaintiff cannot establish estoppel.

Even assuming that the government could be estopped by union representatives' statements from raising failure to properly exhaust as an affirmative defense, the plaintiff has not established that she actually relied on the purported statements or that such reliance was reasonable.

In that regard, the court notes that the plaintiff's own allegations are directly conflicting regarding the timing of what she was told when. She states at least once that she was not told until *after* she filed her CBA grievance that the CBA procedure did not cover discrimination claims. (*See, e.g.*, Doc. No. 54-1, at 16 ("Usually I Faye R. Hobson do not file grievances . . . . However, due to the fact that this 'Equal Pay' matter involved a colleague in which [sic] I had worked closely for six (6) [sic] and one that I respected, I filed a 'Grievance' versus an EEO complaint, but <u>ONLY</u> to later be informed that the Grievance process <u>DOES NOT</u> cover allegations of Discrimination.").) If the plaintiff was not told until after she filed her CBA grievance that discrimination claims were not covered by the CBA, then there was no reliance, reasonable or otherwise. In that event, by choosing to bring a grievance based on unequal pay and other perceived slights but not discrimination, the plaintiff waived her right to later bring a discrimination claim under the EEO procedure based on exactly the same events. *See* 29 C.F.R. §

1614.301(a) ("An aggrieved employee who files a grievance with an agency whose negotiated agreement permits the acceptance of grievances which allege discrimination may not thereafter file a complaint on the same matter under this part 1614 *irrespective of whether the agency has informed the individual of the need to elect or of whether the grievance has raised an issue of discrimination*." (emphasis added)).

Elsewhere, she indicates she was told beforehand. (*See, e.g.*, Doc. No. 54-1, at 75 ("Let the record show that before filing a [CBA] grievance . . . , I . . . inquired about the process and procedures for filing a grievance in reference to the reasons in which I was filing. . . . The grievance procedures in which I followed to file my grievance indicated allegations of discrimination would not be covered in the grievance process. With this in mind, I filed the grievance with the hope that my immediate supervisor . . . would resolve the matter . . . .").) If the plaintiff was erroneously informed *before* she filed her grievance that she could only bring a discrimination complaint through the EEO procedure and not through the CBA grievance procedure, then it arguably might have been reasonable for the plaintiff to believe that she could bring a CBA grievance that did not allege discrimination and a parallel EEO complaint alleging discrimination. However, she did not attempt to bring a parallel EEO complaint. Instead, she affirmatively opted to bring a non-discrimination complaint using the CBA procedure, apparently hopeful that she could resolve her dispute more expeditiously that way. She did not attempt to bring an EEO complaint until after her CBA grievance was resolved unsatisfactorily to her, by which time the statute of limitations for filing an EEO complaint had clearly run. *See* 29 C.F.R. § 1614.105(a)(1) ("An aggrieved person must initiate contact with [an EEO]

Counselor within 45 days of the date of the matter alleged to be discriminatory . . . ."). [2] In light

of the plaintiff's twelve years of experience in filing EEO complaints (as referenced in her

Complaint), the court finds that it was clearly unreasonable for her to presume that she could

wait to pursue her Title VII claims until after she had determined whether she was satisfied with

the outcome of her CBA grievance.

In sum, both because the plaintiff does not allege that agency officials intentionally or

recklessly misled her and cannot show that she reasonably relied on allegedly misleading

statements by union officials either, the court concludes that the defendant is not estopped from

asserting the plaintiff's election of remedies and failure to exhaust as an affirmative defense.

### D.    Plaintiff Failed to Exhaust Administrative Remedies

The court must now consider whether the plaintiff properly exhausted her claims in the

CBA grievance. As the defendant acknowledges, a plaintiff who chooses the negotiated

grievance procedure may eventually seek judicial review before the federal court, once she fully

and properly exhausts her administrative remedies in that forum. *See Redmon*, 243 F. App'x at

925 ("The question before this Court then is whether Redmon exhausted her administrative

remedies as to her Title VII claims in the union grievance procedure."); *Smith*, 869 F.2d at 1006

("Plaintiff Smith . . . elected the remedy of proceeding under the negotiated grievance procedure

and was foreclosed from filing a complaint under 20 C.F.R. § 1613.214. If he had proceeded to

the third step, or on to the fourth step of arbitration, he could have requested that the EEOC

review the final decision. However, he failed to exhaust his remedies under the negotiated

grievance procedure and, therefore, cannot now proceed under his Title VII statutory remedy.").

Here, it is unclear to the court what complete exhaustion under the CBA would look like,

---

[2] The plaintiff's first EEO contact, on April 5, 2015, took place well over 45 days after she learned of the allegedly discriminatory events.

both because the CBA indicates that arbitration may only be brought by the union or the employer, and not by the employee (CBA Art. 12 § 6.A), and because neither party has adequately explained what additional steps the plaintiff would have been required to take before bringing her claims to federal court.[3] Regardless, even if the court presumes that the plaintiff took whatever steps she was required to take to fully exhaust her CBA grievance, her claims in this court were not fully exhausted because the plaintiff did not raise discrimination claims in the CBA grievance.

As indicated above, in both her Complaint in this court and in her CBA grievance, the plaintiff complains that (1) the EDC for Senior Class Sponsor in SY 2013–2014 was much lower than the EDC for the same position during SY 2014–2015; (2) the senior class of 2014 was not permitted to publicly acknowledge the plaintiff as their class sponsor; and (3) school principal Susan Kennedy declined to grant the plaintiff an incentive award. (Compl. ¶¶ 3–6; Step 2 Grievance, Doc. No. 47-2.) In her Complaint, the plaintiff unambiguously asserts that these adverse actions were motivated by race discrimination and retaliation in violation of Title VII. (Compl. ¶¶ 6, 13–21.) In her CBA grievance, these same events are presented as adverse and unfair events, but the plaintiff does not allege that they were motivated by race discrimination. Accordingly, the court finds that she failed to exhaust her administrative remedies as to the Title VII claims now raised in this court. *Accord Redmon*, 243 F. App'x at 925–26 (dismissing for failure to exhaust where union grievance and federal court complaint were based on the same events, but the union grievance did not assert that the adverse events were motivated by unlawful discrimination, even though it could have).

---

[3] Notably, the Notice of Final Decision at Step 3 of the plaintiff's CBA grievance informed the plaintiff that the "final DoDEA Pacific decision is to deny your grievance" (Doc. No. 47-5, a5 4), but it did not indicate that she had the option thereafter of seeking arbitration or any form of further review of that decision.

**V.    Conclusion**

For the reasons set forth herein, the court will grant the defendant's alternative Motion for Summary Judgment on the basis that the plaintiff failed to exhaust administrative remedies. Because it is no longer possible at this juncture for the plaintiff to exhaust her claims under Title VII, the dismissal will be with prejudice. *Accord Robinette v. Union Hosp.*, No. 5:16-CV-1485, 2017 WL 979131, at *4 (N.D. Ohio Mar. 14, 2017) (granting defendant's motion to dismiss with prejudice "because there is currently no way for plaintiff to satisfy the administrative prerequisites to bringing a Title VII claim").

An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge